

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00242-CV

---

IN THE INTEREST OF A.J.F., A CHILD

---

On Appeal from the 69th District Court
Dallam County, Texas
Trial Court No. 12,306; Honorable Jack M. Graham, Presiding

---

February 4, 2021

## CONCURRING AND DISSENTING OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

In this case, I do not quarrel so much with my colleagues' analysis of the grounds for termination as I do with the Department's lackadaisical efforts to rely on an overly-broad application of one particular ground as a one-size-fits-all ground for termination when the Legislature has provided a better-equipped, specifically applicable ground for termination based on the particular facts in question. Because I believe the majority allows the Department to bend the statutory grounds for termination a bit too far for my jurisprudential comfort, I respectfully dissent as to the analysis of the Department's termination of S.G.'s parental rights under section 161.001(b)(1)(D) of the Texas Family Code and, as to that provision, I would reverse. Because I agree with the majority in the analysis of the Department's termination of S.G.'s parental rights under section

161.001(b)(1)(E), and because I further agree with the majority's analysis as to the trial court's determination of the best interest of the child, I concur in the decision to affirm the judgment of the trial court terminating S.G.'s parental rights.

**ANALYSIS**

Today, relying on section 161.001(b)(1)(D) of the Texas Family Code, the majority finds that a person's parental rights can be terminated whenever that person knowingly places or knowingly allows a child to remain in *conditions or surroundings* which endanger the physical or emotional well-being of the child, when the only evidence concerning the "conditions or surroundings" of the child are in utero. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2020). The facts of the case are that, after using methamphetamines in the morning, S.G. presented herself to the hospital to deliver a baby boy, A.J.F. Upon delivery, as per hospital protocol, A.J.F. tested positive for benzodiazepines[1] and opiates. As a result, the Department sought and obtained immediate emergency custody of the child. Neither the mother nor the father ever had any say in where the child was placed, nor where the child would remain from the moment of birth. Furthermore, the only evidence concerning where the child was placed or where the child remained after he was born was clearly not a "condition or surrounding" which endangered his physical or emotional well-being. Therefore, based on a simple reading of the facts, one cannot reasonably say that S.G. "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the child." *Id.*

---

[1] Benzodiazepines are medications known as tranquilizers, e.g., Valium and Xanax.

2

The appellate courts of this State have consistently held that under subsection (D) we examine "evidence related to the environment of the [child] to determine if the environment was the source of endangerment to the [child's] physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *In re S.H.A.*, 728 S.W.2d 73, 84 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). Although the endangerment analysis under subsection (D) focuses on evidence of the child's living environment, rather than the conduct of the parent, the environment produced by the parent's conduct is a relevant factor in determining whether the child's surroundings threaten his well-being. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Under this rubric, the emphasis in our analysis has always been on the child's *living environment* as it existed prior to the child's removal by the Department. As such, the relevant time frame under subsection (D) is prior to a child's removal. *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied).

Relying on a Fort Worth Court of Appeals opinion, the majority holds that a mother's use of drugs during pregnancy is sufficient to support a finding under subsection (D) that she "knowingly placed or knowingly allowed [the child] to remain in conditions or surroundings that endangered his physical well-being while in the womb." *In re B.R.*, No. 02-11-00146-CV, 2011 Tex. App. LEXIS 9033, at *10 (Tex. App.—Fort Worth Nov. 10, 2011, no pet.) (mem. op.). While I do not question whether that is a proper interpretation of *In re B.R.*, and while I agree "prior to birth" is certainly "prior to the child's removal by the Department," I do question whether *In re B.R.* is a proper interpretation of subsection (D).

To begin, the Fort Worth Court of Appeals inartfully conflates its analysis of subsection (D) with its analysis of subsection (E). As stated above, the focus under

subsection (D) is on the child's *living environment*, whereas the focus under subsection (E) is on the *endangering conduct* of the parent—two entirely different considerations. In *In re R.B.,* the court summarily states that "because the evidence pertaining to subsections 161.001(1)(D) and (E) [are] interrelated, we may conduct a consolidated review." It goes on to discuss the mother's drug use during pregnancy and after the child's birth, the fact that she was in and out of jail during the pendency of the termination proceeding (events occurring after birth), and that she was involved in a continuing course of criminal conduct—prior to and since the child's birth. With this evidence, the court summarily concludes that the evidence is legally and factually sufficient to support the trial court's findings under both subsections without any real analysis of how the two subsections differ.

Subsections (D) and (E) are "catch-all" provisions, designed to protect children whose parents have been proven to endanger their children or who put their children in circumstances that endanger them. *In re L.C.L.*, 599 S.W.3d 79, 85 (Tex. App.—Houston 14th Dist.] 2020, pet. filed). However, even though a broad range of circumstances might appear to fall within the purview of these two provisions, appellate courts are tasked with the responsibility of reading the statute only as the Legislature intended. *See* TEX. GOV'T CODE ANN. § 31.021(2) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective."). We accomplish that goal not by reading a statute in a broad or expansive way, but by interpreting a statute narrowly and in accordance with the true intent of the Legislature. Where we know that the intent of the Legislature is to preserve the family unit, if at all possible—that intent is protected by a reading that narrows rather than widens the ways in which parents might lose their parental rights.

4

Along that same argument, I further question the propriety of stretching the application of subsection (D) to include in utero conditions for two fundamental reasons: (1) the Texas Legislature has provided a specific statutory ground for termination when a parent has "been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription," *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(R) (West Supp. 2020), and (2) the practical problems that such a broad interpretation places on the courts. At what point during gestation is the court going to recognize the embryo as a "child" for purposes of termination? Does such an interpretation apply equally to the Department's efforts to terminate the parental rights of a father? If a mother's womb is an endangering environment, how does a father remove or keep that child from "remaining" in that environment? All of these problems would be resolved if the Department would use subsection (R), the fact-specific ground enacted by the Legislature to cover this specific scenario, rather than call on the courts to judicially stretch an otherwise inappropriate subsection.

Because I would not allow the Department to terminate under the provisions of subsection (D), under the facts of this case, I respectfully dissent from that portion of the majority opinion. Otherwise, I concur with the majority in finding that sufficient evidence supports the trial court's finding with respect to subsection (E) and the best interest of the child, and I join in the decision to affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

5